IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION
AT CLEVELAND

| | | |
|---|---|---|
| LISA M. KLINGENSMITH <br> 16100 MAPLE PARK DRIVE APT. 17 <br> MAPLE HEIGHTS, OH 44137 <br><br> Plaintiff, <br><br> v. <br><br> WELTMAN, WEINBERG & <br> REIS, CO., L.P.A. <br> c/o ALAN WEINBERG, <br> REGISTERED AGENT <br> 323 W LAKESIDE AVE STE 200 <br> CLEVELAND, OH 44113 <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CASE NO.:  1:08-cv-397 <br><br> JUDGE <br><br><br><br><br><br> **COMPLAINT UNDER THE FAIR** <br> **DEBT COLLECTION PRACTICES** <br> **ACT, 15 U.S.C. § 1692, *et seq.* AND** <br> **FOR INTENTIONAL INFLICTION OF** <br> **EMOTION DISTRESS; PUNITIVE** <br> **DAMAGES AND ATTORNEY'S FEES** <br><br> **JURY DEMAND ENDORSED HEREON** |

**NOW COMES**, Lisa M. Klingensmith, by and through undersigned counsel, and for her Complaint under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. and for Intentional Infliction of Emotional Distress does hereby state as follows:

### STATEMENT OF THE PARTIES

1. Plaintiff, Lisa M. Klingensmith ("Ms. Klingensmith"), is an individual, a consumer, and a resident of the state of Ohio.

2. Defendant, Weltman, Weinberg & Reis, Co. L.P.A. ("WWR"), is a law firm organized and existing under the laws of the state of Ohio.

### JURISDICTION AND VENUE

3. By this reference, Ms. Klingensmith hereby incorporates the above-stated paragraphs as if fully restated and realleged herein.

4. Pursuant to 28 U.S.C. § 1331, this Court maintains jurisdiction over this matter as it arises under federal law, 15 U.S.C. § 1692, *et seq.* and pendent jurisdiction over any state law claims that arise out of the same nucleus of facts.

5. WWR is subject to this Court's personal jurisdiction and is deemed a resident in this Court's judicial district. 28 U.S.C. § 1391(c). As such, venue is proper in this Court under 28 U.S.C. § 1391(b)(1).

6. In addition, a substantial part of the events that give rise to Ms. Klingensmith's claims occurred in this Court's judicial district. As such, venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## **PRELIMINARY STATEMENT**

7. By this reference, Ms. Klingensmith hereby incorporates the above-stated paragraphs as if fully restated and realleged herein.

8. This matter is brought under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*.

9. Ms. Klingensmith is a consumer, as defined by the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(3), because Ms. Klingensmith is a natural person allegedly obligated to pay a debt.

10. The alleged debt which WWR seeks to collect is a "debt" as defined in 15 U.S.C. Sec. 1692a(5), as the debt is an "obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money…or services which are subject to the transaction are primarily for personal, family, or household purposes…"

11. WWR is a debt collector as defined by the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(6), because WWR uses the mails and its principal purpose is to collect debts,

directly or indirectly and WWR regularly collects or attempts to collect debts. *See also*, Heintz v. Jenkins, 514 U.S. 291, 292 (1995) (holding attorneys who regularly collect on debts through legal proceedings are "debt collectors" under the FDCPA).

## FACTUAL ALLEGATIONS

12. By this reference, Ms. Klingensmith hereby incorporates the above-stated paragraphs as if fully restated and realleged herein.

13. On July 21, 2006, Ms. Klingensmith received an email through her Match.com account from a person named "Matt" using the screen name of "seekingu360."

14. The email was very endearing and appealing to Ms. Klingensmith who had been using the Match.com website to find someone to date. "Matt" also directed Ms. Klingensmith to his yahoo.com profile under the screen name of "orvillematt_34."

15. After receipt of the email, Ms. Klingensmith went to the profile of "Matt" and found him to be someone she could date. The yahoo.com profile stated "Matt" lived in Orville, Ohio.

16. Over the course of the next month or so, Ms. Klingensmith and "Matt" corresponded regularly by email.

17. Although the profile of "Matt" states he lives in Orville, Ohio, "Matt" told Ms. Klingensmith that he was in Africa for work.

18. At the end of August 2006, "Matt" asked Ms. Klingensmith as a favor to receive American Express Gift Cheques, deposit them, and send the money to him via Moneygram. "Matt" stated as explanation for the request that he could not deposit the Cheques in Africa because of the rural banking system.

19. Ms. Klingensmith thought the whole transaction sounded odd. However, based on "Matt's" explanations and reassurances, Ms. Klingensmith agreed to help him.

20. In late August or early September, 2006, Ms. Klingensmith received twelve American Express Gift Cheques in the amount of $500.00 each, a total of $6,000.00.

21. On September 5, 2006, Ms. Klingensmith took the Cheques to the Garfield Heights Branch of U.S. Bank where she had maintained a checking account for several years.

22. Upon reaching the counter at the bank, Ms. Klingensmith showed the Cheques to the teller; explained how and for what purpose she had received them; told the teller she was uncertain as to their validity; and requested that the bank take care to assure that the Cheques were good. She told the teller she was not in a hurry, and that she did not want to transfer any funds from her own account until the bank could assure her that the checks cleared. Ms. Klingensmith asked that care be taken with these deposited items because she did not want to do anything to jeopardize her U.S. Bank account which she had for more than 15 years.

23. The teller told Ms. Klingensmith that the gift checks had to be deposited into her account, and that once they cleared, she would be able to wire the funds; the teller reviewed the documents, assured Ms. Klingensmith that the documents were fine, and told her they would clear in a few days.

24. The teller further stated that Ms. Klingensmith could check online to find out when the checks cleared. The teller stated that when the balance showed in her account, that the funds would be available to wire as planned.

25. The Cheques showed online as having cleared on September 7, 2007 and, at the end of that business day, Ms. Klingensmith went to the same U.S. Bank branch to complete the transaction.

4

26. Ms. Klingensmith followed specific bank instructions to first draw a check on her US Bank account payable to herself in the amount of $6,000.00; the bank accepted the check as consideration for the purchase of MoneyGrams which the bank then used to wire funds to Africa. The bank employee who handled the transaction, identified as "Rami," was described at the time as the only teller in the entire bank who knows how to perform this procedure.

27. The teller explained that because of the amount to be transferred, the transaction had to be broken down into three separate transactions; pursuant to instructions, Ms Klingensmith wrote one check but completed three separate wire transfer requests.

28. At all times Ms Klingensmith told the bank, both at the time of the deposit and at the time of the wire transfer, that she was doing a favor for someone; that she did not feel comfortable because she did not know the person; and that she was relying on the bank to tell her the proper procedure. At all times, and above all, Ms. Klingensmith emphasized to the bank that it should make sure that no funds came from her account until it was certain that all funds had cleared and that the documents were valid.

29. On September 14, 2007, Ms. Klingensmith learned through an attempted transaction at an automatic teller machine that her US Bank account showed a negative balance.

30. Upon seeing the negative balance information, Ms. Klingensmith went back to work and called the branch; she was then informed for the first time that the gift checks she had deposited were counterfeit.

31. On that same day, September 14, 2007, Ms. Klingensmith went to the U.S. Bank branch in Garfield Heights and spoke with the branch manager, Laura.

32. Ms. Klingensmith talked to Laura at length and told her the situation as stated herein. Laura stated to Ms. Klingensmith that the bank was "going to write off the loss as a bad debt." Laura stated, "You are a victim here; this is not your fault."

33. Laura then opened a new account for Ms. Klingensmith and recommended that she file a police report.

34. On September 14, 2006, the same day she learned that the Cheques were counterfeit, Ms. Klingensmith filed a police report with the Garfield Heights Police Department.

35. The bank subsequently returned to Ms. Klingensmith the original Cheques showing that on September 11, 2007, American Express had returned the Cheques to the U.S. Bank branch. The returned Cheques were stamped as "Counterfeit" by American Express on September 7, 2006 (10 Cheques) and September 8, 2006 (2 Cheques).

36. On September 19, 2006, Ms. Klingensmith received a new automated teller machine card for the new account and activated the card on September 22, 2006 after she received the personal identification number in the mail.

37. When the card would not activate, Ms. Klingensmith called the bank and ordered a new ATM card.

38. On September 29, 2006, Ms. Klingensmith received the replacement ATM card and activated it on the same day.

39. On October 2, 2006, Ms. Klingensmith used the ATM card for the first time and it worked fine.

40. On October 3, 2006, when Ms. Klingensmith went to U.S. Bank branch in Middleburg Heights to deposit her paycheck, the teller stated there was a hold on her new

account and that she had to pay $6,342.81 to U.S. Bank; the teller further stated the Bank was closing her newly opened account and charged a fee for early account closure.

41. Upon information and belief, the U.S. Bank branch where Ms. Klingensmith did her banking sells American Express Gift Cheques.

42. American Express Gift Cheques are not issued in $500.00 denominations.

43. On or about February 23, 2007, WWR sent a letter to Ms. Klingensmith as an attempt to collect on the alleged debt from U.S. Bank. In the letter, WWR alleged the following:

(a) "[I]t is alleged that you have committed the criminal offense of passing bad checks in violation of Section 2913.11(B)(2) [sic] of the Ohio Revised Code."[1]

(b) "I am sending you this letter pursuant to the requirements of Ohio Revised Code Sections 2307.60 and 2307.61."

(c) "Unless payment is made within thirty (30) days of the receipt of this letter, a lawsuit may be initiated against you seeking compensatory damages of $5,967.81 plus fees pursuant to your checking account terms and conditions, and statutory liquidated damages of $11,895.62 together with reasonable attorney fees and other costs."

*See* Exhibit 1, attached hereto and made a part hereof.

44. Also in the letter, WWR alleges it is a debt collector.

45. WWR sent the letter to Ms. Klingensmith even with the knowledge that: (a) she was the victim of a scam; (b) that she did not have the requisite intent to have committed a

---

[1] Revised Code 2913.11(B)(2) does not exist.

7

violation of Rev. Code. § 2913.11(B); and (c) that she did not have the knowledge that the Cheques were bad - - but that she relied upon U.S. Bank to make that determination.

46. Ms Klingensmith works for a company that provides supported living for people with mental and physical handicaps.

47. The company emphasizes to its employees the importance of its reputation and need for a very high standard of moral integrity.

48. The company emphasizes to its employees that they will be fired for financial wrongdoing, including passing bad checks.

49. Upon getting the threat of a lawsuit from WWR asserting criminal misconduct, Ms. Klingensmith experienced extreme emotional distress. The distress arose not only from fear of a criminal action, but also from the knowledge that the filing of the action alone would be sufficient to cause her to lose her job.

50. On approximately March 28, 2007, Ms Klingensmith demanded in writing that WWR verify the debt; the letter disputed the validity of the debt.

51. As of the date of this complaint, WWR has sent no response to the dispute letter.

52. Ms Klingensmith continues in a state of anxiety and fear that a lawsuit will be filed and that as a result her employer will fire her from her job.

## FIRST CAUSE OF ACTION

**(Violations of the Fair Debt Collection Practices Act)**

53. By this reference, Ms. Klingensmith hereby incorporates the above-stated paragraphs as if fully restated and realleged herein.

54. WWR alleged in its letter to Ms. Klingensmith that it is entitled to attorney's fees. Pursuant to Rev. Code § 2307.60(A)(1):

> Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code.

55.     Thus, under Rev. Code § 2307.60(A)(1), in order for a party who is allegedly injured by a criminal act to be entitled to attorney's fees, another provision of the Revised Code must provide for such a recovery.

56.     WWR further alleged that Rev. Code § 2307.61 is the provision which allows the recovery of attorney's fees.  Rev. Code. § 2307.61(A)(2) states:

> In a civil action in which the value of the property that was willfully damaged or was the subject of a theft offense is less than five thousand dollars, the property owner may recover damages as described in division (A)(1)(a) or (b) of this section and additionally may recover the reasonable administrative costs, if any, of the property owner that were incurred in connection with actions taken pursuant to division (A)(2) of this section, the cost of maintaining the civil action, and reasonable attorney's fees, if all of the following apply:
>
> (a) The property owner, at least thirty days prior to the filing of the civil action, serves a written demand for payment of moneys as described in division (A)(1)(a) of this section and the reasonable administrative costs, if any, of the property owner that have been incurred in connection with actions taken pursuant to division (A)(2) of this section, upon the person who willfully damaged the property or committed the theft offense.
>
> (b) The demand conforms to the requirements of division (C) of this section and is sent by certified mail, return receipt requested.
>
> (c) Either the person who willfully damaged the property or committed the theft offense does not make payment to the property owner of the amount specified in the demand within thirty days after the date of its service upon that person and does not enter into an agreement with the property owner during that thirty-day period for that payment or the person who willfully damaged the property or committed the theft offense enters into an agreement with the property owner during that thirty-day period for that payment but does not make that payment in accordance with the agreement.

(Emphasis added).

57. When calculating whether the alleged theft offense falls into the purview of Rev. Code § 2307.61, Courts look at the aggregate amount of the alleged theft offense. *See* Justice v. Justice, 2005 Ohio 1802, ¶ 21 (Ohio App. 2005) (denying attorney's fees under Rev. Code § 2307.61 because the aggregate amount exceeded the statutory amount of $5,000.00).

58. WWR's letter to Ms. Klingensmith asserted that WWR may sue Ms. Klingensmith and seek attorney's fees.

59. When looking at whether a notice from a debt collector violates the Fair Debt Collection Practices Act, the Court must look through the lens of the least sophisticated consumer. Smith v. Transworld Systems, Inc., 953 F.2d 1025, 1028 (6th Cir. 1992); Fed. Home Loan Mortg. Corp. v. Lamar, 2007 FED App. 0390P (6th Cir. 2007), 2007 U.S. App. Lexis 22675, 11-13.

60. WWR had no basis in law or fact to make the threat that it would seek attorney's fees and the language had an intimidating effect on Ms. Klingensmith.

61. WWR's language, when viewed through the lens of the least sophisticated consumer, is a violation of 15 U.S.C. § 1692e(5). *See* Gionis v. Javitch, Block & Rathbone, LLP, 2007 FED App. 0377N (6th Cir.), 2007 U.S. App. LEXIS 14054, 13-14 (discussing attempt to collect attorney's fees without a basis in law is a violation of § 1692e(5) of the Fair Debt Collection Practices Act).

62. Additionally, said violation amounts to a "false representation or deceptive means to collect or attempt to collect a[] debt[,]", thereby violating 15 U.S.C. § 1692e(10). *See* Gionis

v. Javitch, Block & Rathbone, LLP, 2007 FED App. 0377N (6th Cir.), 2007 U.S. App. LEXIS 14054, 13-14

63. Additionally, when WWR sent the letter to Ms. Klingensmith, it knew or should have known from its client, U.S. Bank, that Ms. Klingensmith did not violate Rev. Code § 2913.11(B)(2) [sic] and that it could not collect attorney's fees under Rev. Code §§ 2307.60 and 2307.61.

64. Rev. Code § 2913.11(B) provides:

> No person, with <u>purpose to defraud,</u> shall issue or transfer or cause to be issued or transferred a check or other negotiable instrument, <u>knowing</u> that it will be dishonored or knowing that a person has ordered or will order stop payment on the check or other negotiable instrument.

(Emphasis added).

65. The facts establish that Ms. Klingensmith was a victim to a scam and did not have any purpose to defraud and certainly did not have any knowledge that the Cheques would be dishonored.

66. Based upon the above-stated violations of the Fair Debt Collection Practices Act, Ms. Klingensmith has been injured and demands judgment against WWR in the amount of $1,000.00/violation as statutory damages. 15 U.S.C. § 1692k(a)(2)(A).

67. Further based upon the above-stated violations of the Fair Debt Collections Practices Act, Ms. Klingensmith has been further injured and demands judgment against WWR in the amount of $20,000.00 in actual damages to be proven at a hearing or trial in this matter. 15 U.S.C. § 1692k(a)(1).

68. Further based upon the above-stated violations of the Fair Debt Collection Practices Act, Ms. Klingensmith had been further injured and demands judgment against WWR for reasonable attorney's fees. 15 U.S.C. § 1592k(a)(3).

69. Further based upon the above-stated violations of the Fair Debt Collection Practices Act, Ms. Klingensmith demands that WWR pay the costs of this action, 15 U.S.C. § 1592(a)(3), along with prejudgment and postjudgment interest on any and all recoveries against WWR.

---

## SECOND CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

70. By this reference, Ms. Klingensmith hereby incorporates the above-stated paragraphs as if fully restated and realleged herein.

71. The correspondence that WWR sent to Ms. Klingensmith was of a threatening nature and Ms. Klingensmith was in tremendous fear of being sued for a large amount of money and/or prosecuted for an alleged criminal act which she did not commit.

72. That Ms. Klingensmith's reaction was reasonably foreseeable especially when WWR knew or should have known that Ms. Klingensmith did not commit a criminal act.

73. WWR's act in sending the threatening letter was extreme and outrageous, and, the words contained in the letter were extreme and outrageous. *See, e.g.,* MacDermid v. Discover Fin. Servs., 488 F.3d 721, 729 (6th Cir. 2007) (holding plaintiff stated a cause of action for intentional infliction of emotional distress based on creditor's threats of criminal prosecution for failure to pay a purely civil debt that was actually owed to creditor).

74. As a direct and proximate result of WWR's actions and words in the letter, WWR intentionally or recklessly caused Ms. Klingensmith severe emotional distress, loss of sleep, loss of peace of mind, worry, and other emotional distresses.

75. As a direct and proximate result of said intentional infliction of emotional distress, WWR has injured Ms. Klingensmith and Ms. Klingensmith demands judgment in her favor against WWR in the amount of $20,000.00.

76. When WWR intentionally or recklessly inflicted emotional distress upon Ms. Klingensmith, WWR acted with malice and/or a conscious disregard for Ms. Klingensmith's safety and well-being.

77. As a direct and proximate result of said malice and/or conscious disregard, WWR is liable to Ms. Klingensmith for punitive damages in the amount of $60,000.00.

78. An award of punitive damages gives rise to attorney's fees, and Ms. Klingensmith demands that WWR pay her reasonable attorney's fees in this matter.

79. Ms. Klingensmith demands that WWR pay the costs of this action, along with prejudgment and postjudgment interest on any and all recoveries against WWR.

WHEREFORE, Ms. Klingensmith hereby prays for judgment in her favor as against the Defendant as follows:

(a) For her First Cause of Action, for violations of the Fair Debt Collection Practices Act, the amount of $1,000.00/violation as statutory damages;

(b) For her First Cause of Action, for violations of the Fair Debt Collection Practices Act, the amount of $20,000.00 as actual damages;

(c) For her First Cause of Action, for violations of the Fair Debt Collection Practices Act, reasonable attorney's fees;

(d) For her First Cause of Action, for violations of the Fair Debt Collection Practices Act, costs of this action, along with prejudgment and postjudgment interest on any and all recoveries against WWR;

(e)	For her Second Cause of Action, for intentional infliction of emotional distress, the amount of $20,000.00 as actual damages, including non-economic damages;

(f)	For her Second Cause of Action, for intentional infliction of emotional distress, the amount of $60,000.00 for punitive damages;

(g)	For her Second Cause of Action, for intentional infliction of emotional distress, reasonable attorney's fees;

(h)	For her Second Cause of Action, for intentional infliction of emotional distress, costs of this action, along with prejudgment and postjudgment interest on any and all recoveries against WWR; and

(i)	Any further relief that this Honorable Court deems fair and just under the circumstances.

Respectfully submitted:

**SUSAN M. GRAY ATTORNEYS
AND COUNSELORS AT LAW**

/s/ Susan M. Gray
SUSAN M. GRAY (0062356)
21330 Center Ridge Rd., Suite 11
Rocky River, Ohio 44116
Tel. (440) 331-3949
Fax. (440) 331-8160
Email:  smgray@smgraylaw.com

*Attorney for Lisa Klingensmith*

## **Jury Demand**

Ms Klingensmith hereby requests a trial by jury on all matters so triable.

                                       Respectfully submitted:

                                       **SUSAN M. GRAY ATTORNEYS**
                                       **AND COUNSELORS AT LAW**

                                       /s/ Susan M. Gray
                                       SUSAN M. GRAY (0062356)
                                       21330 Center Ridge Rd., Suite 11
                                       Rocky River, Ohio 44116
                                       Tel. (440) 331-3949
                                       Fax. (440) 331-8160
                                       Email:  smgray@smgraylaw.com

                                       *Attorney for Lisa Klingensmith*